Filed 12/12/13  P. v. Maka CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOACHIN MAKA,<br><br>        Defendant and Appellant. | A137604<br><br>(San Mateo County<br>Super. Ct. No. SC077067A) |

Appellant Joachin Maka was convicted, pursuant to a plea agreement, of possession of a loaded firearm in a public place.  On appeal, he contends the trial court erred when it denied his motion to suppress evidence because police officers did not have reasonable suspicion to stop his car based on his briefly honking his horn as he drove past their recently stopped car.  We conclude that the prosecution failed to satisfy its burden of proving that there was objectively reasonable suspicion for the traffic stop.  We shall therefore reverse the judgment and remand the matter to the trial court for further proceedings.

### PROCEDURAL BACKGROUND

Appellant was charged by information with one count of possession of a loaded firearm in a public place (Pen. Code, § 25850, subd. (c)(6)).

Appellant filed a motion to suppress evidence, pursuant to Penal Code section 1538.5 and, after a contested hearing, the trial court denied the motion.

1

On January 11, 2012, appellant pleaded no contest to the charged offense, and the trial court suspended imposition of sentence and placed appellant on supervised probation for three years.

On January 14, 2013, appellant filed a notice of appeal.[1]

## DISCUSSION

Appellant contends the trial court should have granted his motion to suppress evidence on the ground that police lacked reasonable suspicion to stop his car after he briefly honked his car horn.

### A. *Trial Court Background*

Atherton Police Officer David Metzger and San Mateo Police Officer Scott Valencia, both members of the San Mateo County gang task force, were the sole witnesses at the hearing on appellant's motion to suppress evidence. On November 16, 2012, at about 9:00 p.m., Valencia was driving an unmarked police vehicle in which Metzger and Foster City Police Officer Sealy were passengers. They were traveling on Newbridge Street, a residential street in East Palo Alto, when Valencia pulled the vehicle over to the right shoulder of the roadway. The shoulder had a sidewalk and curb, and was intended for vehicle parking. There was room for any car traveling behind them to drive by without moving out of its lane. It took five to ten seconds for the police vehicle to stop moving; it had already come to a complete stop when appellant drove past and sounded his car horn for two to three seconds.

Both officers testified that the car traveling behind them was not affected in any way by their vehicle pulling over to the side of the road. The driver did not have to swerve, brake, or stop his car, and the officers did not know why he sounded the horn. Metzger acknowledged that a driver might honk, depending on the circumstances, if he or she believed that a passenger could "suddenly exit the [stopped] vehicle and that the door

---

[1] Because the sole issue raised on appeal concerns the propriety of the trial court's denial of appellant's motion to suppress evidence, the factual background will be limited to the evidence presented at the hearing on the motion to suppress. (See Discussion, *post*.)

may possibly swing out into the roadway in front of them." In the present situation, however, the police vehicle was "so far off the roadway that even a door opening wouldn't have been out into the traffic portion of the roadway," although it was possible that someone could have stepped out of the police vehicle and into the lane of traffic.

As to the reason for the driver honking the horn, Metzger believed either that the "occupants of the vehicle may have recognized us as a police vehicle, even though our vehicle was unmarked, and may have perhaps been in need of assistance," or that, "if the car was just driving by honking its horn, it would have been a violation of the Vehicle Code." Therefore, the officers conducted a traffic stop of the car. Appellant was in the driver's seat, Allan Finau (Finau) was in the front passenger's seat, and Anthony Finau was in the rear passenger's seat. After the officers approached the vehicle, Metzger spoke with Finau while Valencia spoke with appellant.

Metzger testified that Finau could not provide identification, but gave his name and date of birth. Based on that information, Metzger conducted a records check, which revealed that Finau had an outstanding warrant. Metzger therefore handcuffed Finau before attempting to confirm the warrant. He then located a photograph, through "Cal Photo," which confirmed that Finau was in fact the person with the outstanding warrant. The entire warrant and photo check process took approximately five to ten minutes.

Valencia asked appellant for his driver's license, but appellant said he did not have it with him. Valencia also asked if there was anything illegal in the vehicle, and appellant said there was not. Valencia then asked if he could search the vehicle, and appellant said, "okay." Once appellant and the passengers were out of the car and sitting on the curb, Valencia and Sealy searched the car.[2] Sealy found a semiautomatic handgun under the front passenger seat. Appellant and Anthony Finau were then placed in handcuffs, for safety reasons. Metzger informed appellant that Finau had been arrested for possession of a handgun. Appellant asked, " 'what if it's not his?' " Metzger told him that "it doesn't matter if it's not his. It was located under his seat." Appellant then said, " 'fuck

---

[2] While the other two officers searched the car, Metzger was checking Cal Photo to confirm the identity of Finau.

3

it; it's mine.' " At that point, Metzger read appellant his *Miranda* rights, appellant gave a statement, and Metzger arrested him. Metzger estimated that the total time that elapsed between the traffic stop and appellant's arrest was approximately 15 minutes.

At the conclusion of the hearing, the trial court denied the motion to suppress, explaining: "Based on the totality of the circumstances and the evidence presented in this hearing, the Court will find that the traffic stop was lawful [and] [t]hat the detention was not unduly prolonged. Especially in light of the fact that it was determined in a relatively short period of time, that Allan Finau had an outstanding warrant for his arrest."

## B. *Legal Analysis*

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . .' (U.S. Const., 4th Amend.) Generally, this means that warrantless searches are per se unreasonable unless the search falls within a recognized exception. [Citation.] One exception involves an investigatory stop of a vehicle based upon an objectively reasonable suspicion that the person stopped has broken the law. [Citation.] If the stop does not meet this test, its ' "fruits" ' cannot be used against the person whose Fourth Amendment rights *were* violated and a motion to suppress the evidence is appropriately granted." (*People v. Reyes* (2011) 196 Cal.App.4th 856, 859-860 (*Reyes*), italics added, quoting *Wong Sun v. United States* (1963) 371 U.S. 471, 484-485; see *Terry v. Ohio* (1968) 392 U.S. 1, 22.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity. . . .' [Citation.]" (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).) While reasonable suspicion can arise from less information than is required for probable cause, "[t]he officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' [Citation.] The officer's subjective suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful,

4

even though the officer may be acting in complete good faith. [Citation.]' [Citation.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

"[T]he burden of proving the justification for the warrantless search or seizure lies squarely with the prosecution. [Citations.]" (*People v. Johnson* (2006) 38 Cal.4th 717, 723.)

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. [Citation.] The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Hoyos* (2007) 41 Cal.4th 872, 891.)

Vehicle Code section 27001[3] provides: "(a) The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn.

"(b) The horn shall not otherwise be used, except as a theft alarm system which operates as specified in Article 13 (commencing with Section 28085) of this chapter."

In the present case, Officer Metzger testified that the officers conducted the traffic stop after appellant briefly honked his horn because he believed that there had been a violation of the Vehicle Code (see § 27001, subd. (b)), or, in the alternative, that the car's occupants might be in need of assistance. Appellant argues that, on the contrary, honking his horn was a necessary safety measure in light of the police vehicle suddenly pulling over to the side of the road and stopping. (See § 27001, subd. a).) Therefore, according to appellant, the traffic stop was not based on reasonable suspicion, and the fruits of the ensuing investigation should have been suppressed. (See *Reyes*, *supra*, 196 Cal.App.4th at pp. 859-860.)

We agree with appellant that the prosecution failed to satisfy its burden of proving that the officers possessed objectively reasonable suspicion for the traffic stop. (See

---

[3] All further statutory references are to the Vehicle Code unless otherwise indicated.

*People v. Johnson*, *supra*, 38 Cal.4th at p. 723; *Souza*, *supra*, 9 Cal.4th at p. 231.) First, regardless of what the officers actually believed, it is inherently reasonable for a driver to respond with a brief honk of the horn to a car traveling directly in front of it suddenly pulling over to the side of the road, to warn the driver of the other car that it is not safe to turn back onto the roadway or open the door and step out into traffic. It simply was not objectively reasonable for the officers to believe that, in the circumstances presented, appellant's short honk of his horn constituted a violation of the Vehicle Code. On the contrary, all reasonable evidence pointed to his complying with the requirement of subdivision (a) of section 27001 that a driver must, "when reasonably necessary to insure safe operation[,] give audible warning with his horn."

Second, the alternative reason offered by the police for stopping appellant's car—that the occupants of the car may have recognized that they were passing a police vehicle, and may have been in need of assistance—has absolutely no support in the record. The traffic stop took place at night; the officers were driving in an unmarked vehicle, presumably out of uniform; appellant's car continued moving after the honk; and the officers, after stopping appellant's car, did not inquire about any possible need for assistance. This alternative reason given for stopping the car, which is not just inconsistent with the first, but exceedingly far-fetched, provides additional evidence that the officers' subjective suspicion was *not* objectively reasonable in the circumstances, but instead was unlawfully " 'predicated on mere curiosity, rumor, or hunch.' " (*People v. Wells*, *supra*, 38 Cal.4th at p. 1083.)

Hence, we conclude that the trial court erred in ruling that the officers' suspicion appellant had violated the Vehicle Code when he honked his horn was objectively reasonable. (See *Souza*, *supra*, 9 Cal.4th at p. 231.)[4] Accordingly, the questioning of

---

[4] In light of our conclusion that the prosecution did not meet its burden of showing that the traffic stop was justified, we need not address appellant's additional argument that the stop was based on a mistake of law on the part of the officers. (See *Reyes*, *supra*, 196 Cal.App.4th at pp. 862-863 [a suspicion based on a mistake of law cannot provide the reasonable basis required for a lawful traffic stop]; see also *Ketchum v. Pattee* (1940) 37 Cal.App.2d 122, 131.)

appellant, his consent to the search of his car, and the search itself, which all occurred immediately after and as a direct result of the unlawful traffic stop, were conducted in violation of appellant's Fourth Amendment rights.  (See *Terry v. Ohio*, *supra*, 392 U.S. at p. 22; *Reyes*, *supra*, 196 Cal.App.4th at pp. 859-860, quoting *Wong Sun v. United States*, *supra*, 371 U.S. at pp. 484-485.)  Since the "fruits" of the unlawful search cannot be used against appellant, the court should have granted his motion to suppress evidence.  (*Ibid.*)

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.


_____
Kline, P.J.


We concur:


_____
Haerle, J.


_____
Richman, J.